IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CV-00231-D

| | |
|---|---|
| FLETCHER DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant, Fletcher Davis, seeks judicial review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE- 47] be granted in part and denied in part and that the Commissioner's Motion for Judgment on the Pleadings [DE- 49] be denied.

## STATEMENT OF THE CASE

Claimant protectively filed applications for DIB and SSI on July 25, 2006. (R. 130-42.) He alleged disability beginning June 30, 2006 (R. 147) due to a heart attack, deafness in his right ear, diabetes, high blood pressure, and foot problems (R. 152). The applications were denied initially (R. 70-77) and upon reconsideration (R. 80-87). Claimant then requested a hearing before an Administrative Law Judge ("ALJ") (R. 93-94), which took place on September 9, 2009 (R. 35). On October 19, 2009, the ALJ issued a decision denying Claimant's applications. (R. 18-30.) The Appeals Council denied Claimant's request for review on September 7, 2010 (R. 1), which rendered the ALJ's decision a "final decision" for purposes of judicial review. *See Walls v. Barnhart*, 296

F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant then commenced this action pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

### I. The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *Walls*, 296 F.3d at 290; *see also* 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. *Walls*, 296 F.3d at 290. Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. §§ 404.1520, 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the

2

claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals a Listing, the person is disabled *per se*.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert, who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the following errors by the ALJ: (1) failure to address a decision by a state agency finding that Claimant was disabled for purposes of Medicaid eligibility; and (2) failure to properly evaluate the statements of Claimant's treating physicians.

## II. The ALJ's Findings

The ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ first found that Claimant had not engaged in substantial gainful activity since June 30, 2006, the alleged onset date. (R. 20.) The ALJ next found that Claimant suffered from the severe impairments of substance abuse disorder, bipolar disorder, depression, and coronary artery disease and the non-severe impairments of diabetes-mellitus, stroke with alleged residuals, left-sided weakness, left eye vision problems, right ear hearing loss, seizure disorder, right hand pain, renal insufficiency, hypertension, and headaches. *Id.* However, at step

3

three the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 22.) Next, the ALJ determined that Claimant had the RFC to perform medium work with limitations. (R. 22-24.) At step four, the ALJ found that Claimant was unable to perform past relevant work. (R. 28.) The ALJ finally determined that there were a significant number of jobs in the national economy that Claimant could perform. (R. 29.) As a result, the ALJ found that Claimant was not disabled from the alleged onset date through the date of decision. (R. 30.)

### III. The Administrative Hearing

#### A. Claimant's Testimony at the Administrative Hearing

Claimant testified as follows at the administrative hearing. (R. 40-59.) Claimant was 46 years old at the time of the hearing. (R. 40.) He had completed high school and obtained a truck driving certificate and commercial driver's license. (R. 41.) Claimant last worked as a truck driver from 1994 to 2006. (R. 42.) He had not worked since suffering a heart attack in 2006. (R. 43.) Claimant did not have a permanent residence and relied on friends for a place to stay. (R. 56.)

Claimant testified to a number of conditions that impeded his ability to work. He suffered from a heart condition and had related chest pain, fatigue, and shortness of breath when engaging in activities, such as walking, that required physical exertion. (R. 43-44.) Claimant had two stents placed in April of 2009. (R. 56.) He took Nitroglycerine, which provided relief from the chest pain, but did not participate in a recommended cardiac rehabilitation program because he did not have transportation. (R. 44.) He had related high blood pressure and problems with his legs and has continued to see a cardiologist who mentioned open heart surgery as an alternative to further stent placements. (R. 56.)

Claimant also suffered from hearing loss in his right ear, but wore a hearing aid that improved his hearing. (R. 45.) Claimant had previously experienced seizures, but his last known seizure was in the early 1980s, and he was not taking seizure medication. (R. 45-46.) Likewise, Claimant was diabetic, but it was controlled by his diet and did not require medication, and Claimant had renal insufficiency, but experienced only occasional back aches and received no treatment or medication. (R. 46.)

Claimant was diagnosed with bipolar disorder and had been in a psychiatric ward while in the military and also in Duplin General twice and in Cherry Hospital twice. (R. 47.) He took Seroquel for auditory and visual hallucinations, but it did not help. *Id.* Claimant has trouble concentrating at times due to hearing voices. (R. 54.) Claimant also had a history of cocaine and marijuana use. (R. 47.) He last used cocaine in 2008 and could not recall when he last used marijuana, although he stated that it had been "quite some time." (R. 47-48.) Claimant maintained that the hallucinations were not related to his drug use. (R. 48.) Claimant was under treatment by a psychiatrist for depression. (R. 48-49.) He took medication that he stated helped "[s]ome, not really." (R. 49.) The depression caused memory problems and limited his ability to interact with others. *Id.* He is easily angered and uncomfortable with strangers and crowds. (R. 54-55.)

Claimant had arterial disease that caused pain in his legs after sitting for periods of 30 to 45 minutes. (R. 49-50.) He stated that he could "stand a little bit" for varying periods, but could not walk far before experiencing pain in his legs and shortness of breath. (R. 50.) He walked with a cane on the day of the hearing due to weakness in his left side as the result of a stroke in 2006. (R. 52.) Claimant stated that he could lift nothing over 40 or 50 pounds (R. 50), but later clarified that lifting that weight would cause chest pains and that the most he could lift would be a chair (R. 57-

5

Case 7:10-cv-00231-D   Document 52   Filed 01/05/12   Page 5 of 16

58). Claimant also wore a brace on his right hand due to pain, weakness, stiffness, and swelling as the result of a stabbing that occurred during his military service. (R. 53.) Claimant is right handed and has trouble using that hand. *Id.*

On a typical day, Claimant would get up around 12:00 p.m. or 1:00 p.m., eat, and then lay back down. *Id.* The Seroquel contributed to his fatigue. (R. 55.) He would sometimes watch television and did not go out frequently due to his paranoia. (R. 50-51.) Claimant did not shop, do chores, cook, or engage in hobbies or activities. (R. 51.)

### B. Vocational Expert's Testimony at the Administrative Hearing

Julia Sawyer-Little, a vocational expert ("VE"), testified at the administrative hearing. (R. 59-64.) The VE described Claimant's past work as truck driver, DOT code 904.383-010, strength level of medium, and SVP of 4. (R. 60.) The ALJ then posed the following hypothetical to the VE:

> Assume the existence of an individual who is 46 years old, thus is considered to be a younger individual, has high school education, past relevant work as a truck driver. Assume further this individual has the residual functional capacity to perform medium work lifting up to 50 pounds occasionally, up to 25 pounds frequently. Standing and walking six hours total in an eight hour day. Sitting up to six hours in an eight hour day. Occasionally climbing, balancing, stooping. Avoiding concentrated exposure to hazards. The work should be simple, routine and repetitive in nature in a low stress environment. There should be only occasional contact with the public. Would he be able to do any of his past work?

(R. 60-61.)

The VE responded that such a person could not perform Claimant's past work as a truck driver, but could perform work as a food service worker, DOT code 319.677-014, strength level of medium, and SVP of 2; a store laborer, DOT code 922.687-058, strength level of medium, and SVP of 2; and a laundry worker, DOT code 361.684-014, strength level of medium, and SVP of 2. (R. 61.)

6

The ALJ then asked the VE whether a person with the further restriction of avoiding concentrated exposure to heat and cold would change her testimony. *Id.* The VE responded that the further restriction would preclude the laundry worker job, but that such a person could perform the additional job of hospital cleaner, DOT code 323.687-010, strength level of medium, and SVP of 2. *Id.* The VE also stated that further restrictions of no interaction with the public for essential functions of the job and no constant use of the right hand for fingering or feeling would not change her testimony. (R. 61-62.)

> Claimant's attorney then posed the following hypothetical to the VE:
>
> [A]ssuming an individual who would be limited to no greater than sedentary occupations, lifting no more than ten pounds occasionally, less than ten pounds frequently and limited to again no more than[,] limited to no more than occasional standing, occasional sitting and the individual would be again going back through the objective evidence and through the, Mr. Davis' testimony would be unable to be at an occupation on a regular basis due to side effects from medications causing him to not be able to get into the worksite until 12 o'clock during the day due to effects of drowsiness, would there be any occupations available?

(R. 62.) The VE responded that no jobs would be available to such a person. *Id.* Claimant's attorney also questioned whether an individual "[un]able to deal with co-workers and supervisors on even an occasional basis due to being able to get along with others to take constructive criticism, to follow directions from supervisors" would be employable, and the VE responded in the negative. *Id.*

## IV.   Claimant's Arguments

### A.   Finding of Medicaid Eligibility by State Agency

Claimant first argues that the ALJ's failure to address a decision by a state agency finding Claimant disabled for purposes of Medicaid eligibility is grounds for remand. The Commissioner

7

admits that the ALJ did not discuss the notice, but argues that it was harmless error. The undersigned disagrees that the error was harmless, based on the facts of this case and extensive case law in this District to the contrary.

On November 5, 2008, a hearing officer of the North Carolina Department of Health and Human Services ("NCDHHS") awarded Claimant medical assistance (Medicaid) based on his application of March 12, 2008 and a medical onset date of December 1, 2007. (R. 228.) Social Security Ruling 06-03p expressly provides that such a decision must be considered in determining whether a claimant is disabled:

> Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, **evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.**

SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (emphasis added). The ruling further provides that "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." *Id.*

In the present case, the ALJ not only failed to explain the consideration given, but completely failed to even acknowledge the NCDHHS decision. In such cases, this Court has determined that remand is necessary to allow the ALJ to consider the NCDHHS decision and explain its consideration in the ALJ's analysis. *See Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668312, at *4 (E.D.N.C. Nov. 5, 2010) (concluding, "consistent with district precedent, that remand is appropriate to permit the ALJ to consider the NCDHHS decision and state what weight, if any,

the decision played in the ALJ's analysis."); *Walton v. Astrue*, No. 7:09-CV-112-D, 2010 WL 2772498, at *1 (E.D.N.C. July 9, 2010) (Dever, C.J.) (remanding for further consideration where "the ALJ said nothing [regarding the NCDHHS decision], and SSR-06-3p requires more than 'nothing.'"); *Bridgeman v. Astrue*, No. 4:07-cv-81-D, 2008 WL 1803619, at *1, 10 (E.D.N.C. Apr. 21, 2008) (Dever, C.J.) (remanding for further explanation where ALJ mentioned Medicaid ruling, but dismissed its relevance without discussion).

The Commissioner contends that the ALJ's error was harmless because the NCDHHS decision had (1) no probative value, (2) no applicability to claims for Social Security benefits, and (3) was based on an onset date 18 months after Claimant's alleged onset date for purposes of DIB and SSI. Each of these contentions lack merit.

First, while the ALJ may ultimately determine that the NCDHHS decision has no probative value, that is for the ALJ to consider and not for the Court to decide on first impression. Additionally, this Court has previously rejected the identical argument. In *Walton*, the Commissioner argued that the NCDHHS decision was bereft of any analysis of evidence or discussion of the claimant's impairments. No. 7:09-cv-112-D, Def.'s Obj. to M&R at 2 [DE-34]. The Court was not persuaded and rejected the contention that the ALJ was not required to discuss the NCDHHS decision because it was conclusory. *See Walton*, 2010 WL 2772498, at *1. Furthermore, the NCDHHS decision states that Claimant met "the disability requirement at 20 CFR 416.920(f), Appendix 2, Section 201.00(h)(3)," (R. 228), which does provide some insight into the basis for the NCDHHS decision. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00(h)(3) ("[A] decision of 'disabled' may be appropriate for some individuals under age 45 (or individuals age 45-49 for whom rule 201.17 does not direct a decision of disabled) who do not have the ability to

perform a full range of sedentary work."). Finally, this Court has also held in a similar case that an NCDHHS decision had probative value, because "Medicaid decisions employ the same standards as the Social Security Administration uses in disability determinations." *Alexander*, 2010 WL 4668312, at *4. Accordingly, the NCDHHS decision's probative value, or lack thereof, provides no basis for a finding of harmless error.

Next, the Commissioner's statements that "the terms of the notice itself make it clear that the NCDHHS decision has no bearing on claims for Social Security benefits," Comm'r's Mem. at 10 [DE-50], and that the terms of the notice "in no uncertain terms, exclude its applicability from Social Security disability adjudication," *id.* at 11, are somewhat disingenuous. The decision does state that it "in no way affects any pending or future claims for Social Security or Social Security Income benefits." (R. 228.) However, the purpose of this statement is most reasonably interpreted to put a claimant on notice that a Medicaid decision by NCDHHS is not determinative of any claim for Social Security. As explained above, SSR 06-03p expressly provides for consideration of a disability decision by another governmental agency. Therefore, it would be contrary to the Social Security regulations to conclude that boilerplate terms in a state agency's decision preclude its consideration by the ALJ. Accordingly, the NCDHHS decision's notice provides no basis for a finding of harmless error.

Finally, the fact that the NCDHHS decision was based on an onset date 18 months after Claimant's alleged onset date for purposes of DIB and SSI does not diminish its potential evidentiary value for the period of December 1, 2007 through October 19, 2009, the date of the ALJ's decision. Therefore, the alleged onset date for purposes of the NCDHHS decision provides no basis for a finding of harmless error.

The undersigned notes that a court in the Western District recently concluded that an ALJ's "oblique" statement that he considered opinion evidence in accordance with SSR 06-03p, without any further explanation, indicated that he had considered a state Medicaid decision. *Bradshaw v. Astrue*, No. 2:08-cv-33, 2011 WL 4344538, at *7 (W.D.N.C. Sept. 15, 2011). The *Bradshaw* court went on to conclude that the ALJ's error in failing to explain why he discounted the state decision was harmless, because the ALJ thoroughly evaluated the only evidence used to support the state decision and gave that evidence little weight. *Id.* Therefore, the court concluded that "more robust compliance with SSR 06-03p here would not have changed the ALJ's ultimate decision." *Id.* In the present case, the undersigned cannot conclude that the ALJ thoroughly considered and discounted the same evidence on which the NCDHHS decision was based. Furthermore, this Court has remanded cases where the ALJ failed to specifically mention a NCDHHS decision and merely cited to SSR 06-03p. *Taylor v. Astrue*, No. 7:10-cv-149-FL, 2011 WL 2669290, at *5 (E.D.N.C. July 7, 2011); *Alexander*, 2010 WL 4668312, at *7 & ALJ's Decision, R. 12 [DE-17].

Therefore, the undersigned concludes that the ALJ erred in failing to address the NCDHHS decision and recommends that the case be remanded for further consideration.

**B.      Statements of Treating Physicians**

Claimant next argues that the ALJ failed to properly evaluate the weight given to medical source statements provided by his treating primary care physicians, Dr. Howerton and Dr. Los. The Commissioner counters that the ALJ applied the correct standards in weighing the statements from Claimant's treating sources and that the ALJ was correct to give the statements little weight, because they were inconsistent with the record. The undersigned agrees with the Commissioner that the ALJ properly evaluated the statements of Claimant's treating physicians.

11

The law with regard to evaluating the statements of treating physicians is well established and has been recently stated by this Court as follows:

> Opinions of physicians who have treated a claimant are generally accorded more weight than the opinions of physicians lacking a treatment relationship. 20 C.F.R. § 404.1527(d)(2). . . . Indeed, the Regulations provide that opinions of treating physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F.Supp. 53, 55–56 (W.D. Va. 1996); Soc. Sec. R. 96–2p, 1996 WL 374188, at *2 (July 2, 1996). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Soc. Sec. R. 96–2p, 1996 WL 374188, at *2. Indeed, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *Gray v. Astrue*, Civ. Act. No. CBD–10–1304, 2011 WL 2912789, at *3 (D. Md. July 15, 2011).
>
> When the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to consider in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions through relevant evidence and explanation by the source, the consistency of the opinions with the record, and any specialization of the provider. 20 C.F.R. § 404.1527(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96–2p, 1996 WL 374188, at *5.

*Pickett v. Astrue*, No. 7:10-cv-190-D, 2011 WL 4443229, at *2-3 (E.D.N.C. Sept. 22, 2011) (Dever, C.J.).

### 1. Dr. Howerton

Dr. Howerton provided a letter dated September 12, 2006, which stated that Claimant had been her patient since July 19, 2006, "after his hospitalization for coronary artery disease and cardiac

12

Case 7:10-cv-00231-D   Document 52   Filed 01/05/12   Page 12 of 16

cath" and an apparent small stroke. (R. 294.) Dr. Howerton noted that Claimant had vision problems and left-sided weakness and was scheduled to have physical therapy and stroke rehab. *Id.* She also noted that Claimant had hypertension, DM-2 that was diet controlled, hearing loss, and a toe injury/infection that limited his mobility, but for which he was seeing a podiatrist. *Id.* Finally, Dr. Howerton noted Claimant's bipolar disorder and short term memory problems. *Id.* Dr. Howerton concluded that "I believe [Claimant] will have difficulty maintaining any kind of work with his current conditions and limitations at least until he has completed some rehab. I would expect his medical conditions and rehab to occupy a large amount of his time for 6-12 months." *Id.*

The ALJ recognized Dr. Howerton as a treating physician, but gave her opinion little weight, because it was "not consistent with the medical evidence as a whole" and because it was limited by its terms to precluding Claimant from working for 6-12 months. (R. 28.) Claimant argues that the ALJ's explanation is insufficient in that it failed to address the § 404.1527(d) factors (or *Hines* factors) of (1) the length and nature of the treating relationship, (2) the supportability of the opinions through relevant evidence and explanation by the source, (3) the consistency of the opinions with the record, and (4) any specialization of the provider, and failed to explain how the opinion was inconsistent with the medical evidence in the record. The undersigned disagrees.

The ALJ is not required to "list each of the *Hines* factors in his or her opinion[.]" *Vereen v. Astrue*, No. 5:10-cv-569-FL, 2011 WL 6780788, at *3 (E.D.N.C. Dec. 27, 2011). Prior to stating her conclusion with respect to Dr. Howerton's opinion, the ALJ provided a detailed evaluation of the medical evidence in the record regarding Claimant's heart condition (R. 26-27) and bipolar disorder (R. 24-25), which were the primary bases for Dr. Howerton's opinion. The ALJ then concluded that "treatment records show that [Claimant's] bipolar disorder has been manageable with

13

psychotropic medications" and that Claimant's heart condition was stable. (R. 27.) Therefore, it is clear from the ALJ's decision as a whole why she found Dr. Howerton's opinion to be inconsistent with the record. Furthermore, it was not error for the ALJ to consider the time limitation of 6-12 months in Dr. Howerton's opinion. The ALJ did not completely discount Dr. Howerton's opinion on this basis, as Claimant seems to suggest, but instead considered it as a factor in evaluating the opinion. The undersigned further notes that Claimant testified at the administrative hearing that he ultimately did not participate in the cardiac rehab that Dr. Howerton opined would occupy his time and, thus, preclude him from work for the estimated 6-12 month period. (R. 44.) Accordingly, the undersigned concludes that the ALJ properly evaluated Dr. Howerton's opinion.

### 2. Dr. Los

Dr. Los provided a letter dated September 6, 2007, which stated that it was Claimant's first visit to her practice, that he had chronic medical conditions including mental illness with visual and auditory hallucinations, and a past medical history of depression, bipolar disorder with psychiatric features and multiple hospitalizations, hypertension, and myocardial infarction. (R. 734.) Dr. Los concluded that Claimant would be "unable to maintain work responsibilities due to his inability to concentrate, memory problems, and physical limitations for the next 6 months." *Id.* Dr. Los provided additional letters on February 25, 2008 (R. 735) and May 27, 2008 (R. 736). The former stated that Claimant had many conditions that made him unable to work and enumerated the conditions listed in the prior letter. (R. 735.) The latter stated that Claimant would be unable to work for 18-24 months due to the same previously enumerated conditions. (R 736.)

The ALJ gave Dr. Los's September 6, 2007 opinion little weight, finding that it was "vague and not supported by the record," as well as "restricted by its own terms, because she concluded that

the claimant would be unable to maintain work responsibilities for only 6 months," and "based upon only one visit." (R. 28.) Claimant contends that the ALJ erred in failing to address the § 404.1527(d) *Hines* factors and in failing to discuss the 2008 opinions. As discussed above, the ALJ was not required to list each *Hines* factor in her decision. The ALJ thoroughly discussed Claimant's mental and physical conditions noted in Dr. Los's September 6, 2007 opinion and found that they did not preclude Claimant from performing work (R. 24-28), which is a decision reserved to the Commissioner. *Wilkerson v. Astrue*, No. 7:10-cv-77-D, 2011 WL 3951165, at *6 (E.D.N.C. Aug. 19, 2011) ("A statement by a treating physician that a claimant is unable to work will not necessarily lead to a finding that the claimant is disabled. *See* 20 C.F.R. § 404.1527(e)(1). Opinions such as these 'are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case.' 20 C.F.R. § 404.1527(e)."). Therefore, the ALJ did not err in evaluating Dr. Los's September 6, 2007 opinion.

Claimant also contends that the ALJ erred in failing to address Dr. Los's 2008 opinions. However, the 2008 opinions were essentially restatements of the 2007 opinion and provided no new evaluation of Claimant's medical conditions. In the May 27, 2008 opinion, Dr. Los did extend her estimate for the period of time that Claimant would be unable to work by an additional 18-24 months, citing Claimant's February 2008 hospitalization for suicidal ideation. (R. 736.) However, the ALJ fully addressed Claimant's mental condition, including the February 2008 hospitalization, which the ALJ noted was preceded by episodic cocaine use on the part of Claimant. (R. 25.) Because the ALJ thoroughly considered and rejected the apparent bases for Dr. Los's 2008 opinions, the undersigned concludes that any error in failing to expressly mention those opinions was harmless. *See Yuengal v. Astrue*, No. 4:10-cv-42-FL, 2010 WL 5589102, at *9 (E.D.N.C. Dec. 17, 2010)

(finding that ALJ's failure to consider medical opinion was harmless error, where ALJ considered underlying medical record). Therefore, the undersigned concludes that the ALJ's error in failing to address Dr. Los's 2008 opinions was harmless.

## CONCLUSION

The undersigned **RECOMMENDS** that Claimant's motion for judgment on the pleadings [DE-47] be **GRANTED IN PART AND DENIED IN PART**, that the Commissioner's motion for judgment on the pleadings [DE-49] be **DENIED**, and that the case be **REMANDED** for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 5th day of January, 2012.

DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE